UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HOLLY W. BROWN, M.D.     PLAINTIFF
Individually and as Natural Mother of
Clayton Brown and as Administratrix of
the Estate of Kevin Brown and the
Estate of Elizabeth Brown

v.     CIVIL ACTION NO. 3:04-CV-574-S

UNITED STATES OF AMERICA     DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant the United States of America ("United States"), to dismiss, or in the alternative, for summary judgment (DN 88). For the reasons stated herein, the United States' motion will be will be denied.

### BACKGROUND

On April 10, 2003, plaintiff Holly W. Brown, M.D. ("Brown" or "Holly"), and her family visited Haleakala National Park (the "Park") in Maui, Hawaii, hoping to view the series of waterfalls and pools for which the Park is known. Over time, portions of the stream beds that descend down Haleakala Mountain have worn away, creating waterfalls that cascade into pools known as the "seven sacred pools." There are two main sections: the "lower pools" and the "upper pools." The upper pools are above the roadway leading into the Park, and the lower pools extend from below the roadway down to the ocean. The trail leading to the upper pools follows the Palikea Stream. The Palikea Stream descends from the top of Haleakala Mountain through a narrow gorge. A pool in the gorge leads to a narrow chute

where the stream falls 184 feet over a vertical cliff, known as Makahiku Falls, to a larger pool at the bottom. The stream ultimately empties into the ocean.

Holly and her family, husband Kevin Brown, eight year old daughter Elizabeth Brown, and eleven year old son Clayton Brown, were admitted to the Park upon purchase of a group ticket and proceeded to hike the trail leading to the upper pools. The Browns hiked to an area about 20 to 30 feet upstream of Makahiku Falls and walked across the stream by stepping on rocks that were above stream level. As they were crossing the stream, a sudden "wall of water" from a flash flood swept down the stream knocking Kevin and Elizabeth off their feet and sweeping them over Makahiku Falls to their deaths. Neither body was ever recovered. At the time of the incident, no flash flood warning sign was present on the upper pools trail although such a sign had been there in the past.

Brown has brought this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), seeking to recover damages individually, as the natural mother of Clayton Brown, and as the administratrix of the estates of Kevin Brown and Elizabeth Brown. She alleges that Kevin and Elizabeth's deaths were the result of the United States' failure to provide adequate warnings. The United States has moved the court to dismiss this action pursuant to Fed. R. Civ. P 12(b)(1), on the ground that the FTCA's discretionary function exception, *see* 28 U.S.C. § 2680(a), excepts its conduct from the FTCA's waiver of sovereign immunity. The issue of the applicability of the discretionary function exception under the FTCA is one of federal jurisdiction and is appropriately considered on a motion to dismiss under Fed. R. Civ. P. 12(b)(1). *See Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997).

### DISCUSSION

Motions under Fed. R. Civ. P 12(b)(1), to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *See Ohio Nat'l Life Ins. Co. v. United States*,

922 F.2d 320, 325 (6th Cir. 1990). A facial attack is based on the allegations of the complaint and is a challenge to the sufficiency of the pleading itself. A factual attack on the other hand occurs, where, as here, the defendant challenges the factual existence of subject matter jurisdiction. When a defendant asserts a factual attack, no presumptive truthfulness applies to the factual allegations in the complaint and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Ohio Nat'l Life Ins.*, 922 F.2d at 325).

Pursuant to the FTCA, Congress has waived the United States' sovereign immunity by giving district courts jurisdiction over certain tort actions brought against the United States. 28 U.S.C. § 1346(b). Congress, however, excepted from this waiver "[a]ny claim... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If a case falls within this statutory exception to the FTCA, the court lacks subject matter jurisdiction. *See Rosebush*, 119 F.3d at 440.

The Supreme Court has established a two part test to be applied in determining whether a particular claim falls under the discretionary function exception to the waiver of sovereign immunity. *See United States v. Gaubert*, 499 U.S. 315, 322-25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *see also Rosebush*, 119 F.3d at 441. The first part of the *Gaubert* test requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. *Gaubert*, 499 U.S. at 323-24. If so, the discretionary function exception does not apply because there was no element of judgment or choice in the complained of conduct. *Id.* at 322. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a

course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 536).

If the challenged conduct is determined to be discretionary, the second part of the *Gaubert* test looks to see whether the conduct is "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. "Because the purpose of the exception is to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort... the exception protects only governmental actions based on considerations of public policy." *Id.* at 323 (citing *Berkovitz*, 486 U.S. at 537; *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).

The United States contends that no federal statute, regulation, or policy mandated a warning sign on the upper pools trail and that not providing such a sign is the kind of conduct that the discretionary function exception was designed to shield. As such, the United States takes the position that the FTCA does not operate to waive its sovereign immunity and that this court is without subject matter jurisdiction to hear this action.

**I.  *Gaubert* First Part**

To prevail under the first part of the *Gaubert* test, Brown must demonstrate that the challenged conduct involved no element of "judgment or choice." *Rosebush*, 119 F.3d at 441. Brown must show that the Park violated a federal statute, regulation, or policy that is both specific and mandatory. *Id*.  In deciding whether the complained of conduct involved an element of judgment or choice, the court must determine exactly what conduct is at issue. *Id.*  Brown contends that the United States is liable because the Park failed to warn her and her family of flash floods by failing to provide a warning sign on the

upper pools trail. Thus, the conduct at issue is the Park's failure to provide a warning sign on the upper pools trail at the time Brown and her family visited the Park.

The National Park Service ("NPS") Management Policies are a set of policy directives for NPS managers covering a broad spectrum of park issues. With respect to visitor safety the Management Policies provide that:

> These management policies do not impose park-specific visitor safety prescriptions. The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level... Examples include decisions about whether to install warning signs....

NPS Management Policies 2001at 8.2.5.1. The Management Policies also state that:

> Each park should have an approved park-wide sign plan based on Service-wide design criteria, and tailored to meet individual park needs... Signs will be held to the minimum number, size, and wording required to serve their intended functions, so as to minimally intrude upon the natural and historic settings. They will be placed where they do not interfere with the park visitors' enjoyment and appreciation of park resources... Interpretive signs will be guided by sign and wayside exhibit plans.

NPS Management Policies 2001 at 9.3.1.1. With respect to wayside exhibit plans, the Management Policies state: "wayside exhibits *may* be provided along roads and heavily used walks and trails to interpret resources on site." NPS Management Policies 2001 at 9.3.1.5 (emphasis added). Similarly, the NPS Loss Control Management Guidelines ("NPS-50") set forth the inspection and hazard abatement process to be utilized by park personnel in order to reduce the frequency and severity of NPS visitor accidents. NPS-50 requires the NPS to identify hazards that have caused or may cause injury to visitors and provide signs alerting visitors to these hazards.

Courts interpreting both the NPS Management Policies and NPS-50 have found that these documents outline general policy goals regarding visitor safety, and that the means by which NPS employees meet these goals necessarily involves the exercise of discretion. *See e.g. Blackburn v. United*

- 5 -

*States*, 100 F.3d 1426, 1430 (9th Cir. 1996)*;  Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995); *see also Rosebush*, 119 F.3d 438 (determining the means by which United States Forest Service employees prepared and updated an "operation and maintenance" plan which gave safety related items the "highest priority" involved the exercise of discretion); *Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993) (determining the means by which NPS employees carried out a Special Directive related to the health and safety of NPS visitors involved the exercise of discretion). In *Valdez*, the Ninth Circuit stated that "these guidelines can be considered mandatory only in the larger sense that they set forth broad policy goals attainable only by the exercise of discretionary functions...." 56 F.3d at 1180.

In the case before this court, Brown does not rely upon the NPS Management Policies and NPS-50 in support of her contention that the provision of the flash flood warning sign on the upper pools trail was mandatory. Rather, Brown contends that the Haleakala National Park Wayside Exhibit Plan (the "Wayside Exhibit Plan" or "Plan") and a Board of Inquiry Report mandated the warning sign and removed all discretion as to whether the sign was to be provided on the upper pools trail. We disagree.

The Wayside Exhibit Plan was reviewed and approved in 1983, and was in effect on the date the Browns visited the Park. The Plan called for the installation of a sign on the upper pools trail which warned of the dangers associated with flash floods. Similarly, a 1996 Board of Inquiry Report following the death of individual in the Park described the need to install various warning signs on the upper pools trail. While the Wayside Exhibit Plan and Board of Inquiry Report may describe particular signs to be placed in the Park, they cannot properly be considered federal statutes, regulations, or policies which specifically prescribe a course of action. Rather, the Wayside Exhibit Plan and the Board of Inquiry Report are merely the means used by the Park in carrying out its discretion with respect to the placement of warning signs. As to the Wayside Exhibit Plan, the Management Policies state as much by providing that "wayside exhibits *may* be provided along roads and heavily used walks and trails to interpret resources on site." Accordingly, no statute, regulation, or policy mandated that the Park place a warning

sign on the upper pools trail.  Therefore, the failure to provide such a sign at the time the Browns visited the Park was the product of choice.

## II. *Gaubert* Second Part

Brown can still prove that the discretionary function does not except the United States from the FTCA's waiver of sovereign immunity if the Park's failure to provide a warning sign on the upper pools trail was not the result of a decision "of the kind that the discretionary function exception was designed to shield."  *See Rosebush*, 119 F.3d at 441.

The Sixth Circuit has held that decisions protected from tort liability by the discretionary function exception include: (1) the proper response to hazards; (2) how to make federal lands safe for visitors; and (3) whether to warn of potential dangers.  *Sharp v. United States*, 401 F.3d 440, 445 (6th Cir. 2005) (citing *Rosebush*, 119 F.3d at 443).  In *Rosebush*, the court held that the United States Forest Service's decision not to warn of the dangers associated with open fire pits was susceptible to policy analysis and satisfied the second part of the *Gaubert* test in that it involved balancing the needs of the campground users, the effectiveness of various types of warnings, aesthetic concerns, financial considerations, and the impact on the environment.  119 F.3d at 444.  Similarly, in *Reetz v. United States*, 224 F.3d 794 (6th Cir. 2000),  the Sixth Circuit held that the Forest Service's decision to adopt a "closed unless posted open" policy with respect to off-road vehicle trails was based on public policy considerations which satisfied the second part of the *Gaubert* test in that the decision took into consideration budgetary and aesthetic factors, as well as the Forest Service's long standing policy of minimal intrusion on the natural setting of the national forests and the avoidance of unnecessary proliferation of signs while striving to ensure the safety of park visitors. 224 F.3d at 796.  Additionally, in *Rich v. United States*, 119 F.3d 447 (6th Cir. 1997), the court held that the Army Corps of Engineers' decision with respect to replacing the guardrail on a bridge at a dam operated by the Corps was a decision reached after balancing the

competing needs in running a federal facility and therefore met the second part of the *Gaubert* test. 119 F.3d at 451.

The court finds that the Park's failure to provide a warning sign on the upper pools trail at the time the Browns visited the Park distinguishable from the decisions in *Rosebush*, *Reetz*, and *Rich*. There is no indication that the types of policy considerations at issue in these cases are present in this case. Insomuch as a warning sign was located on the upper pools trail both before and after the Browns' visit, the Park employees cannot be said to have reached a decision not to provide a sign at the time of the Browns' visit based on the balancing of aesthetic concerns, financial considerations, and the need for visitor safety. Moreover, not providing a warning sign at the time of the Browns' visit was not a decision which was reached after balancing the competing needs in running the Park.

The court is mindful that the Sixth Circuit has held that even if there is no evidence that policy concerns were the basis of a challenged decision, the discretionary function exception applies if the decision is susceptible to policy analysis. 119 F.3d at 444 (citing *Myslakowski v. United States*, 806 F.2d 94, 97 (6th Cir. 1986)). However, the court does not find that the Park's failure to provide a warning sign at the time the Browns visited the Park to be the product of a decision susceptible to policy analysis. Rather the failure to provide a warning sign was mere "inaction" on the part of the Park.[1] Indeed, Park Chief Ranger Karen Newton testified in her deposition that she did not know why there was no warning sign on the upper pools trail at the time the Browns visited the Park. The failure to provide the warning sign was not the product of a broad-based policy decision not to warn visitors of the dangers of flash floods on the upper pools trail. Rather the failure to provide the sign was the result of not replacing one particular warning sign which had been removed. This "inaction" is not a decision which was grounded

---

[1] The court takes no position on whether this "inaction" was negligent. Such a determination is irrelevant to an analysis of whether the discretionary function exception to the FTCA is applicable. The court merely classifies the Park's failure to provide a warning sign as "inaction" in order to demonstrate that such a failure was not the product of a decision, much less a decision susceptible to policy analysis.

in "social, economic, or political policy" and cannot be said to be a decision which the "discretionary function exception was designed to shield." *See Gaubert*, 499 U.S. at 322-23.

Accordingly, the Park's failure to provide a warning sign on the upper pools trail at the time the is not protected by the discretionary function exception to the FTCA's waiver of sovereign immunity is inapplicable. Therefore, this court has subject matter jurisdiction to determine whether the United States is liable to Brown in negligence.

A separate order will be entered herein this date in accordance with this opinion.